Good morning, Your Honors. Mr. Weicks is appealing his conviction and sentence of 30 years. Mr. Sterling, could you bring your mic a little closer, please? Is that better, Your Honor? Yes, thank you. Mr. Weicks is appealing his conviction and 30-year sentence on a number of bases. If I may, I'd like to start with the U.S. sentencing guideline issue involving the Washington State 1996 conviction and whether that was a crime of violence for the purpose of the enhancement under the sentencing guidelines. Is this a generic crime? I'm not sure if I understand the question exactly, but I believe it is, Your Honor. It's an assault crime involving a police officer. And in Washington State, there are various first degree, second degree, third degree. This was a third degree, which this Court has previously held. Under the recent Najuan, I hope I'm pronouncing it correctly, Supreme Court opinion, if it is a generic crime, are we limited to the categorical approach? Oh, I see what you're saying, Your Honor. No, in this case, it's not a generic crime. We have to use the modified categorical approach. That's our position anyway. Okay. But I admit, Your Honor, I didn't look at that issue recently. I know we discussed it last year when I was here, but I don't recall in this particular case it ever having come up. Our position certainly in the briefing, our position here today is that the Court needed to look at the sentencing colloquy and the other circumstances involved in that conviction in Washington to determine under the modified categorical approach whether this was a crime of violence. Let me try one more time. Okay. Doesn't it help your client if we're restricted to the categorical approach? Oh, I see what you're saying. Yeah. I'm sorry, Your Honor. I didn't prepare that issue. I'm a little rusty on it. I'm just going to have to defer to the Court on that. I apologize. Okay. Rather than trying to make up a response. Okay. Court's indulgence for a second. I'm going to go ahead and move on to the next issue, Your Honor. That's fine. That's fine. You can pick it back up on rebuttal if you'd like. All right. Go ahead. Just before I move on, just to go over the facts of that case, we had a little bit of scuffle with the officer during the arrest. He didn't attack the officer or anything in that regard. But he did push her hand away or move back when he was being handcuffed, something like that. This Court has previously said that that Washington statute is not automatically a crime of violence, not categorically so. What competent piece of evidence proves what actually happened and what he actually pled to? All that we have in the record is a little bit of what the defense attorney said to the Court during the plea colloquy and what Mr. Weeks said during the plea colloquy. And it wasn't entirely clear exactly what happened based on that description. The indictment itself simply parroted the statute. And all it said was assault. So that's really of no help at all. Okay. Now I'll go ahead and move on to the – I'd like to, if I may, move on to the 924C count. Go ahead. Were there any other questions on that issue? No. I don't see any. Mr. Weeks was convicted of two counts, two separate incidences of two counts of interstate travel for the purpose of – with a minor for the purpose of prostitution. That was two counts based on two dates, travel from California to Las Vegas. Two counts of interstate travel with the intent to engage in illicit sexual contact with the minor. Those were the basis for, in addition, a charge for use of a firearm in furtherance of those crimes under 924C1. Again, we have an issue here under the statute, but it's a different standard of whether or not the 2423 counts are crimes of violence. And our argument is that they're not crimes of violence. This Court has never held whether or not for purposes of 924C, those two statutes are crimes of violence, 2423A and B. Now, the standard that we need to look at is the definition in 924C3, which provides that it's a crime of violence if – and I'm looking at the second part because I think it's the one that's issue – where the crime by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the crime. In this instance, we have travel for the purpose of the minor engaging in prostitution. We would say that's not inherently a crime of violence. There's no – Well, what's the issue? Is it whether it's the travel or the prostitution? Isn't that the critical question? Well, I think that is one of the critical issues. Now, the statute literally is simply the travel. And we would argue that the travel – there's nothing violent or, you know, beyond the possibility, I suppose, of a car accident. There's nothing that presents a substantial risk that physical force will be used to accomplish the travel. That certainly wasn't the circumstance in this case. And looking at it more broadly – But isn't the travel simply the jurisdictional predicate? The crime is really that Congress was concerned about was prostitution. And doesn't prostitution really involve a substantial risk of harm to the young woman who was, in this case, 15 years old, being transported to Nevada to engage in prostitution, at least one of the reasons? Well, I think it's certainly part of the jurisdictional element, but I think it's part of the crime as well. But looking more directly at your question, at the prostitution as being what Congress was after, certainly that's the case. We're not going to argue with that. But transporting a minor to engage in prostitution doesn't necessarily mean that there's going to be a substantial risk that physical force is going to be used to accomplish that prostitution. It may happen in some cases, but where's the evidence that that's a substantial risk? Are we going to rely on what we see on TV or in rap music? I think the question is whether it's reasonably foreseeable, isn't it, that the minor will be exposed to violence? And isn't it reasonably foreseeable that in the prostitution business, particularly across state lines, that a minor could be subjected to violence by customers? Well, I'm not going to agree that it's a reasonable – that we're going to use some sort of reasonable likelihood standard. That's a very broad standard. Sure it is, but we've had circuits, including ours, that have used that very analysis. So what's wrong with it? Well, we have cases under the sentencing guidelines, which is a different standard. The standard on the sentencing guidelines uses a slightly different language. It's whether the crime presents a serious potential risk of physical injury. Now, here we have the different language, whether it's a substantial risk that physical force will be used. Well, if you have a substantial risk of injury, it has to encompass a substantial risk of force being used to produce the injury. Well, that's not necessarily the case, because in some of the cases in this circuit, the injury was from the risk of sexually transmitted diseases and that sort of thing, as well as the risk that the pimp is going to beat up the prostitute. Yeah. Didn't we say in Carter that the crime carried the risk of assault or physical abuse by the pimp's customers or the pimp himself? Yeah, that was the language from Carter. Again, that's not directly applicable because we're under the sentencing guidelines. I know. I mean, under the statute here. But, yes, the Court did say that. I think that that holding is called into question a bit by the Christensen case, 559F31092, which is an armed career criminal case. I know the language under that statute has a specific listing of arson, burglary, that sort of crime. And the Court said, well, it has to be something that rises to that level of purposeful violent conduct. But, once again, that's different language. If we want to start moving language back and forth between the different provisions, the Court's certainly free to do that. But, again, I'll ask the Court, you know, where's the evidence that prostitution, moving a minor across state lines for the purpose of prostitution involves violence? I mean, we don't have any studies that show that. Well, it's the risk of violence, not necessarily violence itself. I mean, that's why the Carter analysis would seem to hurt your case, because I agree it's under a slightly different standard. But the analysis of the Court was that the crime itself embraced that very risk that we're talking about. No, I agree. Carter hurts us. If we're going to follow that exact same language in that reasoning, it does hurt us. But, again, this is a chance for the Court to look at the issue anew under a different statutory provision, not sentencing guidelines that carry a lot more discretion for the judge, but under a statute that requires, and I know we're on de novo review here, but, you know, we're talking about a criminal statute. It requires clear and convincing evidence. Again, where's the evidence that beyond the risk, anytime you're spending time with criminals, in particular, you know, bad people kind of criminals, there's going to be a potential for violence. But is that more violence than, for example, between the pimp and his wife or the pimp and his girlfriend? Or is that more violence than in, you know, the baseline of any criminal activity? Any conspiracy, I suppose, involves some possibility that there's going to be the use of force. Well, in Carter, the Court was focusing on the specific risk of violence to minors, correct? That's true. So why is the Carter analysis wrong? I mean, you can't just say, well, that's sentencing guidelines. This is different, when the analytical foundation of the decision in Carter was the inherent risk in the crime. I can't argue. I mean, if you're going to say, if we were to write an opinion that said we reject the Carter analysis because, what would you complete the sentence? And it can't just be it's a different statute because that's the underlying logic. Because there's nothing in the crime of transporting a minor for prostitution that necessarily involves force. This is odd. I mean, if we're going to speculate and rely on our own experience as we perceive it to be, you know, these are quite often consensual business relationships. How old was your client at the time of these offenses? Fifteen, according to the record. That's the victim, correct? Yes. Your client. Oh, my client. I think he was 29. No, no, he was 32. 32. She was 15. Yes, Your Honor. And he had a gun with him the entire time? He did have a gun. And the evidence was that it was in the trunk and that he took it out and showed it to her and that she said that he told her that it was to protect her. Do you want to talk about any of the other issues before you sit down? I'd like to just talk a little bit about the court not, the trial court not letting Mr. Weeks' attorney inquire into the petty larceny conviction of the victim. This was something that came up during the suppression hearing before the trial. But in response to a motion from the government, the trial court said that defense was not going to bring in that, be able to bring up that petty larceny conviction, which at the time was a fair ruling. But when the victim got on the stand to testify, she changed her story in terms of what her attitude was towards coming to Las Vegas. She said that she had been scared and that she was coming for the purpose of prostitution. This was a change from what? During the suppression hearing, she said that she had lied to the police officer about who she was and what her age was because she had a petty larceny charge in California. And so that's why she was being dishonest to the officer. Whereas later during the trial, she said she lied to the officer because she was afraid of Mr. Weeks. In essence, that's the inference that the government was asking the jury to draw. Under that circumstance, and there was an objection, or there was a request to bring that in. And under those circumstances, I think it was an error for the court to keep that evidence out because it touched on her credibility and on the issue of dishonesty. I don't understand. Were you allowed to, was the defense counsel allowed to impeach her credibility with the inconsistent statements? No, he was not allowed to. That's the error that we're asserting. I'm sorry, I wasn't clear. Okay. Did I answer the question? Five and a half minutes. I'll reserve the rest of my time. Thank you. Sure. We'll hear from the United States at this time. Counsel. Good morning. May it please the Court. Adam Flake from the U.S. Attorney's Office in Nevada for the United States. If I could just address the 924, excuse me, before I say anything else, I would like to bring the Court's attention to an error that I made in my brief with regard to the suppression issue. I accidentally said in my brief that the victim consented to have her purse searched, and that was a misstatement. She didn't consent. She was arrested, and the search was performed incident to arrest. I don't believe the mistake is material. Her arrest was never challenged. It was never put at issue in the suppression hearing. But I feel like just for the sake of candor, I wanted to disclose that to the Court. Why don't you supply the clerk with a corrected page for your brief? I'd be happy to. After the argument, say within 10 days? Certainly, Your Honor. Do you have enough time? Certainly. Okay. Let's start with the same question I asked your opponent. Is this a generic crime? I'm going to have to apologize. Like my colleague, I addressed the argument in the terms that my colleague made. You know something? This is the most serious issue in this case. And the offense level and sentence went up substantially based on the finding of career offender, didn't it? It went up one point, Your Honor. And the defense attorney is unable to respond to questions about it. And you're unprepared to discuss it. Is that correct? I'm certainly prepared to address it in terms of the modified categorical approach. Notwithstanding that the United States Supreme Court this year has told us that if it is a generic crime, we're restricted to the categorical approach. I apologize, Your Honor. Have you even read that case? No, I have not, Your Honor. Okay. Why don't you proceed to the other issues? Certainly, Your Honor. Well, could I ask him one question? Absolutely. Assuming we're applying a modified categorical approach here, isn't it a fact that there's really no competent evidence in the record to support that? I disagree, Your Honor. The defendant's attorney admitted that he committed – that there was sufficient evidence to prove that he committed third-degree assault. Where did he make that admission? It's at – I think what you're talking about is 64 to 65 of the excerpts of the record. It may also be in your brief, but – Yes, Your Honor. You see, as I read it, all the – as I read that paragraph, all the defense lawyer is doing is arguing from the police report. It's quite clear in the second sentence. He says, although the probable cause affidavit does not, that after a particular slapping of the wrist, Mr. Wax apparently had shoved himself or his arm back while continuing to be arrested, and apparently the officer was struck again at that time. The actual police report would not be competent evidence under the modified categorical approach. And I read the first sentence in the same way. When the prosecutor indicated that Mr. Weeks was struck – struck the officer, and I don't think this will be disputed, Mr. Wax was in the process of being arrested, and Officer Bush reported in that, presumably in a report, that Mr. Weeks slapped her wrist as she tried to continue to handcuff Mr. Weeks. I don't see that as an admission of anything other than arguing from what the police report showed, a police report which itself could not be considered under the modified categorical approach. I believe that he – he did at least admit that he slapped her as she was trying to arrest him. Who? Who admitted it? The defense attorney. Well, he seems to me to be saying, and Officer Bush reported, what's happening here is that the prosecutor makes a whole offer of proof, none of which he has personal knowledge of, and he's obviously arguing from what the police report said, and the attorney is responding in kind in terms of what the police report said. And I don't see anything here that indicates an agreement that he even slapped her. Well – In terms of competent evidence that applies when we apply a modified categorical approach. I think that he – if I could just take a step back. He admitted to committing third-degree assault. Excuse me. He admitted – he fled Alfred to committing third-degree assault. He admitted that there was – He admitted that there was a third-degree assault. That's it. And third-degree assault could encompass conduct that is clearly simple touching. And that's all he admitted. When they asked, what did you do, he said, I offer an Alfred plea. So he – as far as I could see, he admitted nothing other than that he was guilty of the crime. That's defined in a general way in the information. But in order to admit to that, he had to admit to intentionally assaulting the officer when she went to arrest him. No, but then now you're taking what would be a categorical approach. You're saying, well, the fact of conviction is enough. And we know it's not enough. So as I read the transcript, and correct me if I'm wrong, this is an Alfred plea situation. The state gets up and says, here's what we prove. The defense counsel is saying, yeah, that's what they can prove. You know, we're confirmed that if they went to trial, they put on that evidence. That's correct. And that's it. He's not confirming. I mean, it's not – it's not evidence in a sense. It's not a recitation in a plea colloquy or anything, right? Well, the effect of pleading Alfred is the same as pleading guilty. He does admit that – I mean, for the sake of this analysis, he does admit to the elements of the crime. Okay. Let me step back again. You would agree that if we were considering a police report only, that would not be competent evidence. Correct. So why is a recitation of a police report at a hearing supposed to be competent evidence? Well, I think the – I think the problem is – or the difference is – my argument doesn't turn on what's in the police report. What it turns on is the fact that in order to plead Alfred to this crime, to assaulting this police officer, he had to admit that there was sufficient evidence to convict him of intentionally assaulting this police officer. And by doing that, it's the same as pleading guilty to assaulting the police officer. He had to admit to the elements of this crime. Well, he didn't admit anything, but the count itself simply says that the defendant, Mario Weeks, in Spokane County, on or about March 27th, did assault Officer Bunch, knowing she was a police enforcement officer who was performing his or her official duties at that time. And he's saying, I don't contest the charge. No contest, in effect. And that's it. And then there's no – there's nothing in terms of competent evidence to show the assault. We agree that under Washington law, the assault could be a simple touching. So under the modified categorical approach, you have to look to certain specific documents to determine whether it can be satisfied. And I don't see anything in here other than the prosecutor and the defense lawyer arguing about what significance you could draw from the police report, which is not admissible. I would just reiterate that in order for him to plead Alford, he had to admit that there was sufficient evidence to convict him of this crime. And when he did that, he essentially – he admitted there was enough evidence to convict him of assaulting a police officer. You agree that you could be convicted of this crime just by a simple touching? A simple touching of a police officer is? Yes, of anybody. Well, not of anybody, not this statute. This statute talks about – it's a different statute than the general assault statute. I mean, I will agree that there are ways you could violate this statute without intentionally assaulting someone. There are other subsections of the statute that specifically say, with criminal negligence, did the following conduct. But to assault a police officer, it requires a showing of intent. And when he admitted to – when he admitted there was sufficient evidence to convict him of that crime, it has – under the – But this is what – this is what the Ninth Circuit said in the – in the Sandoval case. Under the categorical approach set forth in Taylor, third-degree assault in Washington does not qualify as a crime of violence, as that term is defined in the sentencing guidelines. Under Washington law, it is possible to commit a third-degree assault, though through an unlawful touching, that does not involve substantial physical force or serious physical injury. Consequently, that crime is not categorically a crime of violence. That's all he admitted to. That's correct, but – But the fact that he slapped a police officer on the wrist would even – would even satisfy the definition in section 4. It doesn't even – there's not – there's no competent evidence, it seems to me, that even proves that he slapped her on the wrist. He – one moment. Your Honor, he did – in the – in the Washington hearing, he did admit that there was an altercation with the police officer. Mr. Weeks himself admitted that. Now, he said that – he said that he – he didn't think it was intentional and he didn't think it was a third-degree assault, but he says, I guess she thought it was intentional. Where are you referring where he makes that kind of admission? That would be – I'm having a hard time locating it, and I do apologize. One moment. It's – I could help you. One is on ER 80 and the other is on ER 85. He – I was thinking of on 85. Then Mr. Weeks' response is, it wasn't intentional, but I guess if she felt it was intentional, I guess. And earlier on page 80, he says, later I understood that it was a third-degree assault because it was against the law. Well, what does that mean? I mean, he is at least – And he's – in the earlier place, he's saying, I guess the reason why the officer came to a particular spot, then he goes on, he doesn't say anything about what happened. In neither place, that you – either 80 or 85. He even says, well, actually, I feel that I didn't do it. I didn't think it was third-degree assault, but given evidence that they have, I could – I could have been convicted on it. In my opinion, I thought it – I was to tell you exactly what happened. I thought it wasn't third-degree assault. And later, I understood that it was third-degree assault because it was against the law. That's essentially meaningless. It's a total nonsense. I agree that it's very hard to decipher. I would just reiterate that there are ways to violate this Washington statute without acting intentionally. But assault on a police officer is not one of them. If you assault a police officer, you act with intent. You can't be guilty of that crime without intent. So you're arguing a categorical approach. You're forgetting – I mean, you're just saying, let's forget the modified approach. Well, the problem is the Sandoval case and the Young case, the whole statute – Right, but I mean, that's essentially your argument. The Sandoval says, look, this isn't – third-degree assault doesn't categorically qualify. And you're really trying to say Sandoval's wrong, it does categorically qualify, because that's your only avenue here, isn't it? Well, I don't think Sandoval needs to be wrong for my argument to work because the statute is so broad and covers so many things that I admit that there are ways you could violate that statute without committing a crime of violence. But I think that once you're talking about assaulting a police officer, then – I mean, I don't know if that's the – That's a categorical argument. We've been – you know, you've put all your eggs in a modified categorical approach, which is judicially noticeable documents. We've been looking at those. And at the end of the day, I think you're really saying I'm trying to make a categorical argument rather than a modified, aren't I? Yes, Your Honor. But only to the extent that this one section of the statute – Sandoval addresses the entire statute, but not – it doesn't particularly address this section, so I'm not sure if it's – what's that? What that would be called. So what are you saying, is that if I intentionally touch Judge Hawkins, can I be guilty of – I mean, I intended to do it. I can do it just now. Does this satisfy – what is it, Section 4 of the Guidelines? If you intentionally touch a police officer as she is in the course of trying to carry out her duties, then I think it does. I cited the Court in a 28-J letter. I called the Court's attention to the Williams case out of the Tenth Circuit, which was recently decided where they reached that conclusion. May I take you to the burden-shifting argument for a minute? I understand your argument, but it's kind of an odd situation in this case because the prosecutor says they could have called the hotel operators to prove the case, right? Yes, Your Honor. But the defense argument was there's no proof of travel except the victim's testimony, that we were there that weekend, right? Yes, Your Honor. So all of our burden-shifting cases say, well, it's fine to comment on the inability to produce evidence under the defendant's control or would help the defense. I don't quite understand how calling the hotel people to prove that they fits into this because, presumptively, they're the prosecution witnesses, right? Well, I think the defense could have – it's not their burden. It's not the defense burden to say, you know, all I have to do is say we weren't there. There's no evidence. The – I think the defense made a statement that, you know, you didn't hear this following evidence, and the prosecutor came back and said, well, I just want to let you know that they also have the ability to produce evidence if it's helpful to them. And with respect to the hotel records, they could have shown the hotel registration – the defense could have shown the hotel registration from, you know, the guests that had registered that night and that they weren't there if that would have been helpful to them. But they didn't do that. They had the power to do that. They had the power to subpoena those records just as easily as the government did, and they chose not to do that. Okay. Thank you. Rebuttal. Thank you, Your Honor. If we're under the categorical approach, then I think we need to remand for a new sentencing hearing. That's certainly our argument based on the previous authorities from this circuit, which have said that this Washington statute is not categorically a crime of violence because there are certainly ways to violate it that involve very minor touching, as the Court has inquired into. I would ask the Court if it's inclined to affirm – What would happen differently? Oh, go ahead. I mean, the sentencing court used the modified categorical analysis, right? Yes. So what would happen differently in this case? I mean, why do you say we need to remand when you've got a full record and the district court applied the modified categorical approach? Well, we think the Court was also wrong under the modified categorical approach, among other reasons, that there was no competent – I'm sorry, Your Honor? Go ahead. Oh, that there was no competent evidence, that in essence all he pled guilty to through the Alford plea was the charge in the indictment, which simply parroted the statute, didn't provide any facts whatsoever. And we've argued that the statements that Mr. Weeks made in the plea colloquy and the statements of his counsel weren't admitting to any facts, and certainly not to any facts that would rise to the level of a crime of violence. Now, I know we're only talking about one point, but on remand the court – the district court is certainly entitled to consider the entire record, and we would hope that he would do so. Well, he would have to resentence him, wouldn't he? Absolutely. Well, that would be the purpose then. Yes. I'm sorry, did I misspeak? That would be the purpose of the remand on that. Okay. And if I may, just real briefly then, as to the burden shifting, we do think – and we've argued in the brief, so I'm not going to belabor it – but we do think that that was a significant error, the court letting the government attorney do that, that it went beyond merely commenting on the evidence and what might be missing to actually shifting the burden to make it sound like the defendant had the burden of producing these witnesses who were, in fact, or presumably were the hands of the government. I think the government has a point that you could subpoena the records to show an absence, that somebody wasn't there. It's a close issue, Your Honor, I admit, but I think it crossed the line in this case. Unless the court has any other questions, then I'll give up the rest of my time. Okay. I'm sorry, I beg your pardon, Your Honor. Your Honor, if I may, if the court is inclined to affirm, can we have the opportunity to brief the generic crime issue in a supplemental briefing? Well, listen to what I'm about to say. Oh, yes. And the case just arguably submitted for decision. Counsel for both sides will provide the clerk with a letter brief not to exceed five pages, single-spaced, commenting on the applicability. Do you have your pens out of these cases? Nijawan, N-I-J-H-A-W-A-N-V, holder. Do you still not have your pen out, counsel? No, Your Honor. Here. Thank you. You ready? Yes, sir. Okay. It's Nijawan, N-I-J-H-A-W-A-N-V, holder, 129 Supreme Court, 2294. The pen site is 2299, 2009, and also Chambers v. United States, 129 Supreme Court, 687. The pen site is 690, 2009. And the assistant United States attorney who just argued this case will obtain access to a recording of the argument, and you will listen to it in the presence of the United States attorney. Do you understand? Yes. Okay. Counsel for defense, before you file that brief, you will consult with the public defender of Nevada and the two of you will listen to this argument on tape. Do you understand that? Yes, Your Honor. Okay. You're dismissed.
judges: Korman, Hawkins, Thomas